RECEIVED
FEB - 6 2012
TONY R. MOORE, CLERK
BY _____
       DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| WELLS FARGO HOME MORTGAGE, Appellant | CIVIL CASE NO: 6:11-CV-01350 |
| VERSUS | JUDGE DONALD E. WALTER |
| KEITH A. RODRIGUEZ, In re: Bobby and Bonnie Higdon Estate Appellee | MAG. JUDGE C. MICHAEL HILL |

ORIGINALLY FILED
IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IN RE: BOBBY AND BONNIE HIGDON | CASE NO: 07-51338 CHAPTER 13 |
| KEITH A. RODRIGUEZ, TRUSTEE on behalf of Bobby and Bonnie Higdon | ADVERSARY NO: 09-05032 |
| VERSUS | |
| WELLS FARGO HOME MORTGAGE | |

## MEMORANDUM RULING

Before the Court is an appeal filed by Wells Fargo Home Mortgage ("Wells Fargo") of an order issued by Bankruptcy Judge Robert Summerhays awarding sanctions in the amount of $5,535.00, against Wells Fargo and payable to Hamilton J. Chauvin, Jr., counsel for the standing Chapter 13 Bankruptcy Trustee. [A.P. Doc. #42, Doc. #4].[1] This Court has jurisdiction to review

---

[1] "A.P. Doc." refers to Bankruptcy Court Adversary Case No: 09-AP-05032. "Doc." refers to the District Court Case No: 11-01350.

Wells Fargo's appeal pursuant to 28 U.S.C. § 158(a).

## FACTUAL BACKGROUND [2]

As the parties previously entered into a stipulation on the merits, the only issue on appeal relates to the Bankruptcy Court's award of sanctions, in the form of attorney's fees, against Wells Fargo and made payable to Hamilton J. Chauvin Jr., as counsel of record for the standing Chapter 13 Bankruptcy Trustee Keith Rodriguez.

The Trustee commenced an adversary proceeding in this matter by filing a complaint on August 10, 2009, after more than a year of mutually failed communication attempts and a lack of agreement between accounting figures. The Trustee's main frustration stemmed from what it perceived to be a lack of clear delineation between pre-petition arrearages and post-petition ongoing payments and whether those amounts were properly applied to the loan at issue pursuant to the confirmed plan.[3] As acknowledged by the bankruptcy judge, regarding each sides' account of the discovery process and related communications, "it seems night and day. Both sides have a different account of how the negotiations and the interaction worked out."[4] The bankruptcy judge went on to say that he is "very familiar with these types of matters" and that it has become standard practice

---

[2] The parties entered into "Stipulated Factual Findings and Conclusions Concerning Accounting Matters," which this Court wholly adopts. [Doc. #6-32]. However, the only issue pertinent to this appeal is the Bankruptcy Court's Order awarding sanctions against Wells Fargo [Doc. #6-38], and thus only those facts relevant to the award of sanctions will be discussed in this decision.

[3] Doc. #6-48; p. 42, lines 12-14; p. 43, lines 15-19; p. 44, lines 5-8 and 16-21.

[4] Doc. #6-48; Transcript of September 1, 2010 Hearing on Motion to Compel, p. 11, lines 6-8.

2

in the Western District of Louisiana to "proceed[] with a Motion for Accounting."[5]

There were two hearings involved in the adversary proceedings. The first hearing was held on September 1, 2010 and addressed a Motion to Compel, filed by the Trustee regarding its Motion for Accounting from Wells Fargo. At this hearing, Wells Fargo explained that the dispute from its perspective, arose from a change in insurance premium during the course of the subject bankruptcy which caused an "accounting glitch."[6] Mr. Chauvin, counsel for the Trustee clarified for the record that all he required of Wells Fargo was "what [he] asked for in the discovery request, particularly that [Wells Fargo] give [the Trustee] a separate accounting for arrearages and ongoing payments, which doesn't seem to be an impossible obstacle."[7] As the bankruptcy judge explained, the discrepancy between the two parties' positions flowed directly from Wells Fargo's lack of understanding of the issues with which the Trustee is involved. The Trustee was looking for a specific piece of information, in an identified format requested by the Motion for Accounting, and Wells Fargo failed to provide such information in a way that could be understood by the Trustee and his staff.[8] Instead, Wells Fargo provided its own accounting records, as they are regularly kept in the course of its business and argued at length that it went above and beyond to provide detailed spreadsheets and an employee affidavit explaining the figures so provided.[9] However, the Trustee's staff maintained that these documents merely added further confusion to its understanding of the

---

[5] *Id.*; p. 11, line 9; and p. 12, lines 3-4.

[6] Doc. #6-48; p. 15, line 15; and p. 17, lines 1-6.

[7] Doc. #6-48; p. 20, lines 24-25; and p. 21, lines 1-2.

[8] Doc. #6-48; p. 13, lines 15-23.

[9] Doc. #6-35, Exh. C; A.P. Doc. #37-1, Exh. C.

accounting records.[10]

In recognizing the struggles complained of by both parties, the bankruptcy judge stated "I understand that there has [sic] been some problems, both sides feel that they haven't gotten a response, there's been a lack of communication. I'm not going to find fault on that."[11] However, in response to Wells Fargo's continued attempts to downplay the parties' dispute by explaining that the amount at issue was a mere seventy dollars, the court declared that to be a "red herring" at this stage of the bankruptcy proceedings.[12] It is clear from the arguments of both sides that there was not an agreement as to the seventy dollar figure at that point. The Trustee had yet to receive accounting numbers from which it could ascertain the status of the subject loan, despite having attached a standard form explaining to Wells Fargo the necessary format of its discovery requests.[13] The Bankruptcy Court's final ruling on the Motion to Compel ordered Wells Fargo to provide the separate accounting figures for pre-petition arrearages and post-petition ongoing payments to the Trustee one week in advance of the next and final status conference scheduled in the matter. The Bankruptcy Court also admonished the parties to put any past hostility behind them and come to some agreement in order to resolve this matter.[14]

The second hearing, which took place approximately nine months later on July 6, 2011, addressed the Trustee's motion for sanctions and attorney's fees against Wells Fargo. Prior to the

---

[10] Doc. #6-28; p. 27, lines 6-8; p. 32, line 6; p. 33, lines 14-17; p. 36, lines 13-14; p. 37, lines 4-7; p. 38, lines 3-7; p. 42, lines 9-14.

[11] Doc. #6-48; p. 18, lines 22-25.

[12] Doc. #6-48; p. 43, lines 12-13.

[13] Doc. #6-48; p. 42, lines 15-25; p. 43, lines 1-3.

[14] Doc. #6-48; p. 48, lines 15.25.

hearing, the parties each filed memoranda setting forth their positions.[15] Wells Fargo argued that there was no legal basis for attorney's fees in this matter.[16] However, the Bankruptcy Court clarified that the award of attorney's fees was being made as a sanction in this case, which it finds to be appropriate when there is a lack of compliance with the Court's orders and/or a delay in providing information.[17] Although Wells Fargo attempted to minimize the gravity of the prior, relevant disagreements in this matter, the Bankruptcy Court made clear that "[i]t took a long time" and "a lot of handholding by the Court" for the parties to reach an agreement on accounting figures in this matter.[18] Finding that Wells Fargo "drug its feet in providing [the requested] information," the Bankruptcy Court explained that information is often one-sided in mortgage cases such as this, residing only in the hands of the servicers and mortgage holders.[19] Because of the asymmetric nature of the relevant information, the Court emphasized that it must require information be provided on a "swift and expedited basis."[20] Otherwise, resources are wasted and the Court will fail to faithfully fulfill its duties of ensuring that payments are applied in accordance with confirmed plans.[21]

At the conclusion of the hearing, the Bankruptcy Court made clear that it was the intent of the Court to provide Wells Fargo with a learning experience, so that future cases are handled more

---

[15] Docs. ##6-34, 6-35.

[16] Doc. #6-49; p. 5, lines 7-8.

[17] Doc. #6-49; p. 5, lines 16-20; p. 6, lines 1-2.

[18] Doc. #6-49; p. 6, lines 23, 25.

[19] Doc. #6-49; p. 9, lines 5-6 and 18-19.

[20] Doc. #6-49; p. 9, line 4.

[21] Doc. #6-49; p. 9, lines 8-14.

appropriately and information will be provided in the format requested by the Trustee.[22] In doing so, the Court specifically classified its award as "a sanction, and the sanction is a form of attorney's fees that were incurred by the Trustee as a result of the delays and the failure to respond of Wells Fargo."[23] The Court found that there was an unreasonable delay, meriting an award of sanctions.[24] In its assessment, the Court was careful to include only those attorney hours that directly related to Wells Fargo's "failure to timely and adequately respond" to the discovery requests of the Trustee's counsel.[25] Accordingly, attorney hours spent fashioning the initial complaint and stipulations on the merits were individually backed out of the overall award. The final award including hours built into discovery, the initial Motion for Accounting and related responses, and the Motion to Compel, amounted to seventeen hours at a rate of $225.00 per hour, totaling $5,535.00.[26] Wells Fargo now appeals that sanction.

## STANDARD OF REVIEW

Federal Rule of Bankruptcy Procedure 8013 prescribes the standard that a district court employs in reviewing the decision of a bankruptcy court and reads as follows:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

---

[22] Doc. #6-49; p. 11, lines 1-5.

[23] Doc. #6-49; p. 16, lines 9-11.

[24] Doc. #6-49; p. 11, lines 8-11.

[25] Doc. #6-49; p. 12, lines 2-3; see also p. 15, lines 17-19..

[26] Doc. #6-49; p.15, lines 20-25; p. 16, lines 11-13.

*See Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992). A district court reviews a bankruptcy court's findings of fact for clear error, and its legal conclusions de novo. *See In re Bradley*, 588 F.3d 254, 261 (5th Cir. 2009) (citing *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir.1997)). The bankruptcy court's decision to impose sanctions is discretionary; therefore, we review the exercise of this power for abuse of discretion. *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993), cert. denied, 510 U.S. 991 (1993)).

## LAW AND ANALYSIS

Rule 8013 of the Bankruptcy Rules, which we apply here, mandates the application of the "clearly erroneous" standard of review to the bankruptcy court's findings of fact. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985). Its language tracks that of Rule 52(a) of the Federal Rules of Civil Procedure almost verbatim. *Id.* Federal Rule of Civil Procedure 52(a) provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Id.* at 574 (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949). In applying the instant findings of fact to the Bankruptcy Court's

decision to award sanctions, this Court will review that decision for an abuse of discretion.[27] *See In re Bradley*, 588 F.3d 254, 261 (5th Cir. 2009).

The control of discovery is likewise committed to the sound discretion of the trial court, which in this case was the Bankruptcy Court. *See Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 549 (5th Cir. 1985). The Fifth Circuit has held that Title 11 U.S.C. § 105(a) allows bankruptcy courts the power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings. *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997). That section provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Like the Fifth Circuit, we find that the language of this provision is unambiguous. *Id.* Thus, a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code. *Id.* Pursuant to 11 U.S.C. § 105, a bankruptcy court has the power to carry out any action which it deems necessary and proper, including the implementation of orders related to the bankruptcy court's duty to enforce a confirmed plan. *See* Title 11 U.S.C. § 1321 *et seq.*

The Bankruptcy Court was heavily involved in the extensive negotiations and

---

[27] This Court likewise reviews a bankruptcy court's award of attorney's fees for abuse of discretion. *In re Babcock & Wilcox Co.*, 526 F.3d 824, 826 (5th Cir. 2008). However, in this case, Judge Summerhays made clear that the award was one for sanctions, in the form of attorney's fees. Thus, the Court need not reach the substantive law applicable to a lower court's grant of attorney's fees.

communications between the two parties in this matter. Although the Bankruptcy Court would tend to agree with Wells Fargo that this matter likely should never have been brought as an adversary proceeding, that issue is not now before this Court on appeal. What is before us is the bankruptcy judge's discretionary decision to issue an award of sanctions against Wells Fargo. It is clear that, whatever be the frustrations of Wells Fargo regarding its failed communication attempts, Wells Fargo failed to timely comply with the Order of the Bankruptcy Court. Specifically, Wells Fargo failed to provide documents in the manner so ordered, according to the Motion for Accounting made by the Trustee, granted by the Bankruptcy Court, and confirmed by the Court's ruling on the Motion to Compel. In deference to the Bankruptcy Court's experience and expertise in resolving discovery disputes within Chapter 13 cases such as this, it is obvious that there was no clear error in the Bankruptcy Court's findings of fact. The Bankruptcy Court admonished the parties on multiple occasions, expressed its frustrations with the time lag and inadequate discovery responses, and ultimately chose to award sanctions as a result of the unreasonable delays.

Under the plain language of 11 U.S.C. § 105(a), the Bankruptcy Court was well within its sound discretion to issue a sanction for failure to timely comply with its Order. In issuing said sanction, as discussed above, the bankruptcy judge filtered out all attorney hours which he did not feel were part of the unreasonable delay resulting in the final sanction. Thus, the attorney hours used to establish the award were reduced from the original 41.60 hours originally submitted by Mr. Chauvin, to just 17 hours. The Bankruptcy Court's thoughtful discussion and analysis, after conducting a hearing and considering the parties' written briefs on this issue,

clearly does not demonstrate an abuse of discretion.[28]

Accordingly, the Court finds that the Bankruptcy Court's sanction for attorney's fees against Wells Fargo and in favor of Mr. Chauvin, as counsel for the Trustee, was proper.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that the appeal filed by Wells Fargo [Docs. #4] is hereby **DISMISSED** and the order of the Bankruptcy Court awarding sanctions to Hamilton J. Chauvin, Jr. is hereby **AFFIRMED**.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 6th day of February, 2012.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[28] Doc. #6-49; pp. 15-18.